IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


RAYMOND E. SOMMERVILLE,          )
                                 )
                 Plaintiff,      )
                                 )
vs.                              )          Case No. 06-1110-JTM
                                 )
MICHAEL J. ASTRUE,[1]            )
Commissioner of                  )
Social Security,                 )
                                 )
                 Defendant.      )
_____)


RECOMMENDATION AND REPORT


        This is an action reviewing the final decision of the

Commissioner of Social Security denying the plaintiff disability

insurance benefits and supplemental security income payments.

The matter has been fully briefed by the parties and has been

referred to this court for a recommendation and report.

**I.  General legal standards**

        The court's standard of review is set forth in 42 U.S.C.

§ 405(g), which provides that "the findings of the Commissioner

_____

        [1]On February 12, 2007, Michael J. Astrue was sworn in as the
Commissioner of Social Security.  In accordance with Rule
25(d)(1) of the Federal Rules of Civil Procedure, Michael J.
Astrue is substituted for Commissioner Jo Anne B. Barnhart as the
defendant.  In accordance with the last sentence of 42 U.S.C. §
405(g), no further action is necessary.

as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be

2

determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does

3

not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

## III.  History of case

Plaintiff filed his first application for disability on

4

March 28, 1995.  On April 10, 1996, administrative law judge
(ALJ) Robert Burgess found that plaintiff was not disabled (R. at
155-160).  Plaintiff filed his second application for disability
on April 29, 1996.  Plaintiff again alleged February 1, 1993 as
his onset date of disability, but later amended his onset date to
March 1, 1996 (R. at 1007, 1009).  On September 22, 1998, ALJ
Keith Sickendick determined that plaintiff was not disabled (R.
at 169-177).  On August 21, 2001, the Appeals Council vacated the
1998 decision and remanded the case for further proceedings (R.
at 236-239).  On June 10, 2002 ALJ William Zleit issued a
decision that plaintiff was not disabled (R. at 18-35).  On
January 15, 2003, the Appeals Council denied plaintiff's request
for review (R. at 11-12).  Plaintiff sought judicial review of
the agency action.  On August 11, 2004, this Court remanded the
case for further proceedings (R. at 1052-1082).

On January 26, 2006, ALJ Jack McCarthy issued the 3rd ALJ
decision issued on plaintiff's second application for disability
(R. at 1007-1035).  The ALJ found that plaintiff's receipt of a
VA pension exceeds the monetary limits for unearned income which
precludes him from being eligible for supplemental security
income (R. at 1008-1009, 1035).  Plaintiff does not dispute this
finding by the ALJ.

Regarding the claim for disability insurance income, the ALJ
found that plaintiff was insured through March 31, 1999, and

5

therefore considered whether plaintiff was disabled from March 1, 1996, the alleged onset date, through March 31, 1999 (R. at 1009). At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity from March 1, 1996 through March 31, 1999 (R. at 1034). At step two, the ALJ determined that plaintiff had the following severe impairments: degenerative changes of the cervical, thoracic, and lumber spines; degenerative changes of the left knee, status post left knee arthroscopy; fibromyalgia; obesity; and dysthymia (R. at 1028). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 1028). After establishing plaintiff's RFC, the ALJ determined at step four that plaintiff could not perform past relevant work (R. at 1032). At step five, the ALJ found that plaintiff could perform a significant number of jobs in the national economy, including work as a surveillance system monitor, an order clerk, and a production checker (R. at 1033, 1035). Therefore, the ALJ concluded that plaintiff was not disabled. On March 14, 2006, the Appeals Council declined to assume jurisdiction (R. at 999-1001). Plaintiff again sought judicial review of the agency decision.

**IV. Did the ALJ properly evaluate the opinion of Dr. Prindaville, a psychologist, and Dr. Cox, a psychiatrist?**

On September 26, 1996, a consultative mental examination

6

signed by Dr. Cox, a psychiatrist, and Dr. Prindaville, a psychologist, was performed on the plaintiff (R. at 392-396). They diagnosed plaintiff with alcohol dependence (in sustained remission), personality disorder NOS with schizotypal, dysphoric, paranoid, and avoidant features, fibromyalgia and arthritis (by client report), and gave plaintiff a GAF score of 55. Their summary and recommendation was as follows:

> It is clear that at times Mr. Sommerville's reality testing is somewhat questionable. He stated that he was discharged from the Armed Services because his commanding officer thought he was "crazy". Currently he tends to distrust people and tends to be rather avoidant in his lifestyle. He did attempt to shoot himself with a rifle by his own report in 1988 although he denies current suicidal intent. He does have a relationship with his wife and with his three children and seems to be committed to them. **It is clear that he is reporting a great deal of pain that debilitates him remarkably. This is the primary thing that would interfere with his working. In addition to this he is totally unable to form abstractions. His recent memory is deficient and he clearly distrusts people and is unable to interact with them in a reasonable manner. As a result maintaining full time employment would be dubious.**

(R. at 396, emphasis added).

The ALJ's analysis of this opinion was as follows:

> The undersigned notes that this opinion was influenced more by claimant's purported pain and other complaints than any objective mental findings in the examination. The conclusion was also inconsistent with an estimated GAF of 55. This examiner, Dr. Prindaville, is not a treating psychologist,

but an examining psychologist...

The claimant was observed to grimace
throughout the interview communicating that
he was in significant pain. However, the
orthopedic examination performed at the VA on
March 22, 1997 found no cause for any of his
complaints except possibly his left knee
(Exhibit B25F, pp. 16-17). The only Axis I
diagnosis given by Dr. Prindaville was
alcohol dependence in sustained remission.
Dr. Prindaville gave no diagnosis of
dysthymic disorder or depression, which all
treating sources have given. An Axis II
diagnosis of personality disorder, NOS, was
given, but no treating source has given this
diagnosis. The Axis V GAF score was 55, which
is consistent with GAF scores documented
later by other sources. Dr. Prindaville based
the opinion on the claimant's report of a
great deal of pain that was believed to
debilitate him remarkably and the pain was
found to be the primary thing that would
interfere with his working. Other
observations were made as to his inability to
form abstractions, deficient recent memory
and clear distrust of people causing him to
be unable to interact in a reasonable manner.
Dr. Prindaville then stated that the
claimant's maintaining full time employment
would be "dubious" (Exhibit B10F).

It is noted by the undersigned that the
evaluation of the claimant's pain is outside
of the psychologist's expertise as this
examiner is not an orthopedist, a neurologist
or other physician. This opinion was
influenced more by claimant's purported pain
and other complaints than any objective
mental findings in the examination. This
comment is inconsistent with an estimated
Axis V GAF of 55 as well as substantial other
evidence in the record. Dr. Prindaville is an
examining psychologist, not a treating
psychologist. Thus, the regulations for
treating source opinions do not apply to the
opinion given by Dr. Prindaville. The
undersigned notes that the significant mental

8

symptoms documented during the examination
are not consistent with later evaluations by
treating mental health professionals. Thus,
the severity of his mental state set forth in
this report is not documented to continue.
The undersigned notes that the State agency
psychological consultant responded to Dr.
Prindaville's opinion as to his ability to
work being "dubious." The State agency
psychologist commented that the active
diagnosis provided by Dr. Prindaville was
personality disorder which is a condition
determined by his developmental years. Dr.
Prindaville did not have access to
information related to the claimant's
earnings record which reflects 13 years of
successful performance of substantial gainful
activity which contradicts the consultative
examiner's opinion that his ability to work
is "dubious" (Exhibit B12F).

(R. at 1015, 1024-1025).

The court has found numerous errors in the ALJ's analysis of

the opinions expressed by Drs. Cox and Prindaville.  First, the

ALJ found that, in contrast to plaintiff's communication of

significant pain throughout the interview, the orthopedic

examination performed at the VA on March 22, 1997 "found no cause

for any of his complaints except possibly his left knee" (R. at

1024).  That is an inaccurate statement of the medical record.

The assessment on March 22, 1997 states as follows:

Basically this patient's problem is that he
has diffuse pain syndrome...I feel as though
this is some sort of pain syndrome, and he
has really no basic orthopedic cause for any
of his complaints, other than possibly his
left knee...

(R. at 1161).  The medical assessment found no "orthopedic" cause

9

for his complaints, but also found that plaintiff has diffuse or some sort of pain syndrome.  Thus, the medical record cited by the ALJ did not find that there was "no cause for any of his complaints."  This report is corroborated by Dr. Ryan's finding on February 11, 1997 that plaintiff has fibromyalgia which results in multiple pain syndromes (R. at 420), and Dr. Kumar's opinion on April 29, 2006 that plaintiff had persistent musculotendinous/myofacial pain syndrome (R. at 341).[2]  VA medical records from June 10, 1997 and July 15, 1997 state that plaintiff has fibromyalgia and indicate twelve trigger points (R. at 446, 448, 1016-1017).  Even the ALJ acknowledged that fibromyalgia was a severe impairment.  Fibromyalgia can be disabling.  Brown v. Barnhart, 182 Fed. Appx. 771, 773 (10th Cir. May 25, 2006).

Second, the ALJ asserted that Dr. Prindaville gave no diagnosis of dysthymic disorder or depression, which all treating sources had given (R. at 1024).  However, the diagnosis of Drs. Cox and Prindaville stated that plaintiff had a personality

---

[2]Dr. Ryan stated on July 8, 2005 that Dr. Kumar's diagnosis is consistent with the diagnosis of fibromyalgia (R. at 1339).  "Fibromyalgia describes a condition very similar to myofacial pain syndrome."  Mondragon v. Apfel, 3 Fed. Appx. 912, 918 (10th Cir. Feb. 12, 2001).  Medline Plus, a website which is a service of the U.S. National Library of Medicine and the National Institute of Health lists myofascial pain syndrome as an alternative name for fibromyalgia. http://www.nlm.nih.gov/medlineplus/ency/article/000427.html, June 26, 2007.

disorder with dysphoric features (R. at 396).  Dysphoria is defined as an emotional state characterized by anxiety, depression, and restlessness.  Compact American Medical Dictionary (1998 at 140).  Thus, the ALJ failed to acknowledge that the diagnosis of Drs. Cox and Prindaville included a diagnosis with features of depression.

Third, the ALJ stated that no treating source had given a diagnosis of personality disorder (R. at 1024).  Although no treating source diagnosed a personality disorder, Dr. Diller, who performed a state agency psychological assessment on October 29, 1996 based on the medical records provided to him, found that plaintiff suffered from a personality disorder, noting that plaintiff had inflexible and maladaptive personality traits which cause either significant impairment in social or occupational functioning, or subjective distress (R. at 402, 408).  The ALJ relied on the assessment by Dr. Diller in making his RFC findings (R. at 1027).

Fourth, the ALJ discounted the opinions of Dr. Prindaville because evaluation of pain is outside the expertise of a psychologist, noting that Dr. Prindaville is not a physician (R. at 1024).  However, the ALJ failed to acknowledge that the report was also signed by Dr. Anne Cox, a psychiatrist.  A psychiatrist is a physician who specializes in psychiatry.  Compact American Medical Dictionary (1998 at 372).  Furthermore, the ALJ offers no

11

basis for his finding that a psychologist lacks expertise to evaluate pain.  In the case of Lazarich v. Heckler, 593 F. Supp. 766, 770 (N.D. Calif. 1984), a psychologist performed a "psychological pain evaluation."  The court held that such reports should not be rejected simply because of the imprecision of the psychiatric methodology or the absence of substantial documentation unless there are other reasons to question the diagnostic technique.  Many other cases indicate that psychologists can evaluate claims of pain.  See Wild v. Chater, 98 F.3d 1348 (table), 1996 WL 560104 at *1 (9th Cir. Oct. 1, 1996) (Wild was referred to a psychologist for "psychodiagnostic evaluation of a chronic pain condition"); Margan v. Apfel, 2000 WL 34027974 at *6 (N.D. Iowa Feb. 16, 2000) (plaintiff seen by a "pain clinic psychologist"); Morgan v. Chater, 1996 WL 392144 at *2 (D. N.H. Apr. 26, 1996)(a clinical psychologist evaluated plaintiff's complaints of chronic pain).  The ALJ has offered no valid reason to question the ability of either Dr. Cox or Dr. Prindaville to evaluate plaintiff's claims of pain.

Fifth, the ALJ states that the significant mental symptoms documented during the examination are not consistent with later evaluations by treating mental health professionals (R. at 1024). However, the ALJ failed to mention that Dr. Richardson, in a report dated March 22, 1997 in the VA medical records, made the following conclusion: "He appears significantly impaired by

chronic pain, fibromyalgia" (R. at 1164).  This finding by Dr.
Richardson is quite consistent with the opinion expressed by Drs.
Cox and Prindaville that plaintiff suffers from fibromyalgia and
"is reporting a great deal of pain that debilitates him
remarkably" (R. at 396).

The ALJ's conclusion that plaintiff is not disabled is based
in part on the fact that the ALJ gave little or no weight to the
opinions of Drs. Cox and Prindaville.  However, because of the
numerous errors by the ALJ in his analysis of the opinions
expressed by Drs. Cox and Prindaville, the court finds that
substantial evidence does not support the ALJ's conclusion that
plaintiff is not disabled.

**V.  Did the ALJ properly evaluate the opinion of Dr. Ryan?**

A treating physician's opinion about the nature and severity
of the claimant's impairments should be given controlling weight
by the Commissioner if well supported by clinical and laboratory
diagnostic techniques and if it is not inconsistent with other
substantial evidence in the record.  <u>Castellano v. Secretary of</u>
1083 (10th Cir. 2004).  A treating source opinion not entitled to
controlling weight is still entitled to deference and must be
weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of
examination;
(2) the nature and extent of the treatment relationship,
including the treatment provided and the kind of examination or
testing performed;
(3) the degree to which the physician's opinion is supported by

13

relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion.  If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so.  Watkins, 350 F.3d at 1301.

On February 11, 1997, Dr. Ryan, plaintiff's treating physician, stated the following:

> Ray [Sommerville] has a number of problems including fibroymalgia and this is a complex condition which results in multiple pain syndromes such as sleep disturbance and depression...He does require periods of rest and has limitations of lifting and physical exertion.

(R. at 420).

On July 8, 2005, Dr. Ryan wrote a letter stating the following:

> My name is John M. Ryan. M.D. I treated Mr. Sommerville intermittently from March 1996 to March 2001. He also received treatment from the VA. He suffered from chronic back pain as well as pain in both arms and knees and generalized pain. These were caused by a variety of diagnoses, including, fibromyalgia, which was confirmed by rheumatologist Douglas Gardner, M.D. Dr. Kumar's diagnosis of persistent musculotendinous/myofacial pain syndrome is also consistent with the diagnosis of fibromyalgia. I was also treating him with

medication for depression, which complicated
the medical picture and made the pain worse.

The combination of these problems caused him
to be very limited in his ability to function
on a sustained basis. It is my opinion that
he could not sustain an ongoing basis more
than two hours of vocational effort out of
eight sitting or standing, and his
exacerbations of pain would cause him to be
absent at least once each week if he
attempted work. His condition requires
significant periods of rest. He could not be
reliable even at a part time schedule. He was
on multiple sedative medications for pain and
depression that markedly impaired his ability
to concentrate on any meaningful task.

I performed a consultative evaluation of Mr.
Sommerville July 6, 1995 for Social Security.
At that time I thought his functional
limitations were only mild. That was,
however, before I got to know him much better
in the treatment setting and became aware of
his mental impairments and his fibromyalgia.
It became clear upon treating him that he was
much more limited than I had originally
believed when I saw him at that consultative
evaluation. A simple person intellectually,
he was a credible patient. He was consistent,
and his complaints were consistent with his
diagnoses.

The opinions expressed here are based both on
my treatment notes and my specific
recollections and observations. It would not
be possible, and I do not attempt to document
everything in my treatment notes.

(R. at 1339-1340).

The ALJ provided the following analysis of the opinions

expressed by Dr. Ryan:

Dr. Ryan saw the claimant as a patient from
March 18, 1996 to January 14, 1997 and then
on two subsequent occasions, January 4, 2001

15

and March 20, 2001, which were after his
opinion. Thus, he had a limited treatment
relationship with the claimant. Dr. Ryan's
records contain few objective findings upon
examination (Exhibits B1F (2 pages), B7F (1
page), and B24F (6 pages). There is no report
of any thorough physical examination by Dr.
Ryan after the first consultative examination
when he found only <u>mild</u> functional
limitation. Most of the claimant's treatment
was by other medical sources through the VA.
There is no record that Dr. Ryan saw the
claimant from January 14, 1997 to August 6,
1999 or from August 7, 1999 to January 4,
2001 or that he saw the claimant after March
20, 2001 (Exhibit B24F). There is no
indication that Dr. Ryan saw the records of
the claimant's treatment or examination
records from the VA, but he did see the
psychologist evaluation from September 26,
1996. Dr. Ryan did not appear to have full
access to all the examination reports from
other treating sources or diagnostic test
results when he formed his opinion. It is not
clear that he was in fact aware of the
claimant's full-time work at the hog farm and
that his work exceeded these limits. Dr.
Ryan's opinion is inconsistent with his own
consultative physical examination of the
claimant and it is not supported by
substantial other evidence. His opinion is
not specific as to what he meant by the
claimant requiring periods of rest and his
limitations of lifting and physical exertion
were likewise not quantified. Therefore, his
opinion is given no weight.

Dr. Ryan also issued another opinion on July
8, 2005. He concluded the claimant could sit
or stand only 2 hours of an 8 hour day, would
be absent at least once each week, and
suggested his condition required significant
periods of rest. He also noted that the
claimant's multiple sedative medications for
pain and depression markedly impaired his
ability to concentrate (Exhibit B29F, pp.
2-3). At the consultative examination on July
6, 1995, Dr. Ryan thought his functional

16

limitations were only mild. Dr. Ryan asserted that this was before he got to know the claimant much better in a treatment setting. It is noted that the more recent opinion was prepared following a telephone consultation with the claimant's attorney. With respect to the concentration deficits and depression symptoms, the undersigned notes that there is no record that Dr. Ryan ever conducted a mental status examination of the claimant. Mental status examinations by other sources found the claimant's concentration and memory to be intact.

There is also evidence that the claimant continued to garden, mow his lawn and change the oil in his car. After the claimant separated from his wife in 1999, he continued to care for his children, although he reported that they helped with chores (Exhibit 41). On July 8, 2003, the claimant reported that he kept busy running his household taking care of his children on his own and without help (Exhibit B28F, pp. 64-65). On February 1, 2004, he was alert and oriented times three, with mild deficits in recent recall, no deficits in remote recall, adequate concentration, and a GAF score of 55 (Exhibit B28F, p. 31). There are similar findings on April 28, 2003 (Exhibit B28F, pp. 70-71), The claimant was able to perform serial 7's.

While Dr. Ryan was a treating physician on an intermittent basis, his opinion issued six years after the claimant's insured status expired relating to his functioning during his earlier periods of treatment is not consistent with the evidence as a whole. In fact, Dr. Ryan admitted in the report that he does not document great detail in his treatment records. While the claimant was seeing a rheumatologist for fibromyalgia, there was no mention of his condition limiting his ability to sit and stand. The complaints attributed to fibromyalgia were primarily upper extremity complaints. There is some documentation of patellofemoral pain

syndrome after his knee surgery. However, he
primarily was treated for his back complaints
during exacerbations. Likewise, the mental
health providers, who prescribed his
antidepressant medications, did not document
any sedative effect and his depressive
symptoms were noted to be stable with
medication. The undersigned does not find Dr.
Ryan's opinions to be controlling due the
lack of support for his opinion in his own
treatment records and the fact his opinions
are not consistent with the treatment records
of other medical sources who were assessing
the claimant's symptoms and were evaluating
specialists in orthopedics, rheumatology and
mental health. His opinions are given little
weight.

(R. at 1025-1026).

The court has found numerous errors in the ALJ's analysis of
the opinions expressed by Dr. Ryan.  First, the ALJ stated that
Dr. Ryan saw the plaintiff in 1996-1997 and on two occasions in
2001 and concluded that he had a "limited treatment relationship"
with the plaintiff (R. at 1025).  In this case, the issue is
whether plaintiff was disabled from March 1, 1996 through March
31, 1999.  During that time period, Dr. Ryan saw the plaintiff on
13 occasions between March 18, 1996 and January 14, 1997.  Dr.
Ryan's letter of February 11, 1997 thus came after Dr. Ryan had
seen plaintiff on 13 occasions over a 10 month period.  In
addition, Dr. Ryan's records indicate either some type of contact
with the plaintiff or prescription refills on five other
occasions between August 25, 1996 and May 30, 1997 (R. at 335-
336, 377, 1135-1140).  On March 24, 1997, the VA requested

medical records from Dr. Ryan (R. at 1137).  Thus, from March 18, 1996 through May 30, 1997 Dr. Ryan's treatment relationship with the plaintiff was certainly not "limited" as described by the ALJ.

Furthermore, Dr. Ryan referred plaintiff to Dr. Kumar for a consultation.  Dr. Kumar is certified in neurology and psychiatry.  Dr. Kumar provided a report to Dr. Ryan on April 29, 1996 (R. at 338-341).  Dr. Ryan also referred plaintiff to Dr. Gardner for a rheumatology consultation.  That report is dated July 31, 1996 (R. at 384-386).  Thus, Dr. Ryan had not only his own treatment notes to rely on when offering his opinions concerning the plaintiff, but also had these reports from two specialists.

Second, the ALJ noted that Dr. Ryan's records contain "few objective findings" upon examination (R. at 1025).  Dr. Ryan's primary diagnosis was fibromyalgia (R. at 420, 1339-1340).  Dr. Kumar had diagnosed plaintiff with myofacial pain syndrome (R. at 341), which is consistent with a diagnosis of fibromyalgia.  As courts have noted repeatedly, the symptoms of fibromyalgia are entirely subjective, and there are no laboratory tests to identify its presence or severity.  Gilbert v. Astrue, 2007 WL 1068104 at *4 (10th Cir. Apr. 11, 2007); Brown v. Barnhart, 182 Fed. Appx. 771, 773 (10th Cir. May 25, 2006);  Priest v. Barnhart, 302 F. Supp.2d 1205, 1213 (D. Kan. 2004);  Munsinger v.

Barnhart, D. Kan. No. 01-1332-MLB, report and recommendation at 21, July 22, 2002; affirmed by district court Aug. 26, 2002); Glenn v. Apfel, 102 F. Supp.2d 1252, 1258 (D. Kan. 2000); Anderson v. Apfel, 100 F. Supp.2d 1278, 1286 (D. Kan. 2000); Ward v. Apfel, 65 F. Supp.2d 1208, 1213 (D. Kan. 1999).  Because fibromyalgia is diagnosed by ruling out other diseases through medical testing, negative test results or the absence of an objective medical test to diagnose the condition cannot support a conclusion that a claimant does not suffer from a potentially disabling condition.  Priest, 302 F. Supp.2d at 1213.

In the case of Gilbert v. Astrue, plaintiff argued that the ALJ, having found fibromyalgia to be a severe impairment, failed to sufficiently consider that condition, and the functional limitations that can be caused by it.  2007 WL 1068104 at *4. The court agreed with the plaintiff, noting the following:

> Here, although the ALJ acknowledged Dr. Kassan's conclusion in 2000 that Ms. Gilbert probably had a fibromyalgia-type syndrome, as well as his initial, clinical examination finding "multiple tender points over the spine, hips, knees and ankles," Aplt.App., Vol. 3 at 1005, the ALJ did not otherwise address that impairment, or the limitations it may cause, in determining to give the 2001 opinion minimal weight. Instead, the ALJ relied expressly on objective test results showing only mild degeneration in her back and knees and other test results indicating her peripheral neuropathy was also mild...Regarding the 2003 opinion, the ALJ again relied on a lack of objective findings with respect to her back, as well as two instances where she failed to complain to Dr.

> Kassan about back pain. While it was
> appropriate for the ALJ to assess the
> objective findings with respect to Ms.
> Gilbert's individual joints when considering
> her claims of disability based on arthritis
> and disc disease, the lack of objective test
> findings noted by the ALJ is not
> determinative of the severity of her
> fibromyalgia. See Sarchet, 78 F.3d at 306;
> Green-Younger v. Barnhart, 335 F.3d 99, 108
> (2d Cir.2003) (reversing where ALJ failed to
> give controlling weight to treating physician
> opinion of disability based on fibromyalgia
> and "effectively required 'objective'
> evidence for a disease that eludes such
> measurement").

1007 WL 1068104 at *4.

A patient must be positive on at least 11 of the 18 tender points to be diagnosed with fibromyalgia.  Brown v. Barnhart, 182 Fed. Appx. at 773; Glenn, 102 F. Supp.2d at 1259.  The VA medical records on July 15, 1997 diagnosed plaintiff with fibromyalgia and found 12 trigger points (R. at 446).  The ALJ acknowledged these findings and found that plaintiff had a severe impairment of fibromyalgia (R. at 1016-1017, 1028).  Given the undisputed medical evidence that plaintiff had fibromyalgia, and Dr. Ryan's reliance on this diagnosis when offering his opinions concerning plaintiff's limitations, it was clear error to discount the opinions of Dr. Ryan because his records contained few objective findings.

Later in his decision, the ALJ indicated that the "objective findings" as well as his daily activities do not reasonably provide a basis to conclude that plaintiff's pain caused him to

be disabled from all work (R. at 1031).  However, as the case law
makes clear, the lack of objective findings is not determinative
of the severity of the pain associated with fibromyalgia.

    Third, the ALJ discounted the opinion of Dr. Ryan because,
according to the ALJ, it is not clear that Dr. Ryan was aware of
plaintiff's full-time work at the hog farm and that his work
exceeded the limits set by Dr. Ryan (R. at 1025).  Plaintiff
testified that he quit working at the farm about March 1, 1996
and went to see Dr. Ryan because his arm was swollen (R. at
1363).  Plaintiff alleges an onset date for disability of March
1, 1996 (R. at 1009).  Dr. Ryan's notes from March 18, 1996,
plaintiff's first appointment with Dr. Ryan, indicates that
plaintiff reported that he had been working at a hog farm and had
been lifting and moving heavy objects (R. at 336).  Thus,
contrary to the ALJ's representation, Dr. Ryan's notes are clear
that Dr. Ryan was aware of plaintiff's work at the hog farm.
Furthermore, the limits set by Dr. Ryan were established after
plaintiff quit working at the hog farm.  Thus, there is no
inconsistency between the limits established by Dr. Ryan and the
work previously done by the plaintiff at the hog farm.

    Furthermore, the ALJ discounted plaintiff's testimony that
his arm swelling kept him from working because plaintiff was
"only found to have myofacial pain" (R. at 1029).  Dr. Kumar
diagnosed myofacial pain syndrome after plaintiff was referred to

22

him by Dr. Ryan.  However, as noted above, fibromyalgia/myofacial

pain syndrome can be disabling, and even the ALJ found

fibromyalgia to be a severe impairment.  Therefore, it was error

to discount plaintiff's credibility solely because he "only" had

myofacial pain.

Fourth, the ALJ states that the opinions of Dr. Ryan are

inconsistent with the consultative examination done by Dr. Ryan

on July 5, 1995 and is not supported by other evidence (R. at

1025).  After that physical examination, Dr. Ryan found a

decreased range of back motion with mild functional limitation,

and some functional limitation in the wrist (R. at 877).

However, Dr. Ryan made clear in his 2005 letter that this earlier

opinion was made prior to his later treatment of the plaintiff

and becoming aware of his fibromyalgia and mental impairments,

which led him to conclude that plaintiff was much more limited

than he had opined in 1995.  Thus, Dr. Ryan has provided a

legitimate basis for his later findings.  Furthermore, the ALJ

does not cite to any medical evidence by any treating or

examining medical source that disputes the findings of Dr. Ryan.

In this court's recommendation and report of July 20, 2004, the

court specifically directed the Commissioner to properly evaluate

Dr. Ryan's opinions and explain how the clinical signs or

laboratory findings in the VA medical records or medical

specialists are inconsistent with the limitations suggested by

23

Dr. Ryan (R. at 1068-1069).  The ALJ has failed to cite to any

medical record from a treating or examining medical source which

is inconsistent with the limitations proposed by Dr. Ryan.

Fifth, the ALJ gave no weight to Dr. Ryan's 1997 opinion

that he requires periods of rest and has limitations of lifting

and physical exertion because they were not quantified (R. at

1025).  However, in the case of Roberts v. Barnhart, 36 Fed.

Appx. 416 (10th Cir. June 12, 2002), the court held as follows:

> The ALJ stated that claimant's doctors did
> not list any functional restrictions for her,
> ignoring that both Dr. Hart and Dr. Wong
> believed that she was disabled by carpal
> tunnel syndrome for over a year. If the ALJ
> believed that the information they provided
> was inadequate to make a finding about her
> restrictions, he should have recontacted them
> for clarification. White v. Barnhart, 287
> F.3d 903, 908 (10th Cir.2001) (citing 20
> C.F.R. § 416.912(e)).

36 Fed. Appx. at 419.  More recently, in the case of Robinson v.

Barnhart, 366 F.3d 1078 (10th Cir. 2004), the court held as

follows:

> If evidence from the claimant's treating
> doctor is inadequate to determine if the
> claimant is disabled, an ALJ is required to
> recontact a medical source, including a
> treating physician, to determine if
> additional needed information is readily
> available. See 20 C.F.R. §§ 404.1512(e)(1)
> and 416.912(e)(1)("**We will seek additional
> evidence or clarification from your medical
> source when the report from your medical
> source contains a** conflict or **ambiguity that
> must be resolved**, the report does not contain
> all the necessary information, or does not

24

> appear to be based on medically acceptable
> clinical and laboratory diagnostic
> techniques.").

366 F.3d at 1084 (emphasis added).  Given the lack of specificity

or ambiguity in Dr. Ryan's 1997 report, the ALJ had a duty to

recontact Dr. Ryan to resolve the ambiguity before rejecting his

opinion.  Furthermore, Dr. Ryan's 1997 report cannot be

considered in isolation, but must be considered in light of Dr.

Ryan's 2005 report, which did quantify some of plaintiff's

limitations.

Sixth, the ALJ questioned the findings of Dr. Ryan in 2005

that plaintiff was markedly impaired in his ability to

concentrate due to medications for pain and depression.  The ALJ

stated that mental status examinations by other sources found

that plaintiff's concentration and memory were "intact" (R. at

1025).  However, the report by Drs. Cox and Prindaville on

September 29, 1996 states that "his recent memory is deficient"

(R. at 396).  A mental disorders exam by Dr. Richardson, dated

March 22, 1997, found that memory for past and recent events is

good, but also noted that plaintiff had some decreased

concentration (R. at 1163), and further found that plaintiff

appears "significantly impaired by chronic pain, fibromyalgia"

(R. at 1164).  Thus, contrary to the assertion by the ALJ, not

all examinations by other sources found that plaintiff's

concentration and memory were intact.

25

Seventh, the ALJ noted that the 2005 opinions expressed by Dr. Ryan were prepared following a phone consultation with plaintiff's attorney (R. at 1025). The clear implication of this statement is that Dr. Ryan's opinions should be discounted because Dr. Ryan was advocating for his client or assisting his client in obtaining disability benefits.

In the case of <u>McGoffin v. Barnhart</u>, 288 F.3d 1248, 1253 (10th Cir. 2002), the court held as follows:

> Finally, the ALJ rejected Dr. Luc's assessment because he felt it signified "a certain advocacy posture." App. vol. II, at 24. This holding, too, was error. We held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician. <u>See</u> <u>Frey v. Bowen</u>, 816 F.2d 508, 515 (10th Cir.1987). Here, as in <u>Frey</u>, the ALJ's rejection of Dr. Luc's assessment on the basis of advocacy is a mere "conclusory statement" that contradicts our rule on the weight to be given the report of a treating physician, "without suggesting some exceptional basis in the facts of this case." <u>Id</u>. Unlike the ALJ, we do not find it exceptional that the treatment team for a patient in a transitional living program assists the patient in making her social security disability claim.

Similarly, in the case of <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1121 (10th Cir. 2004), the court held:

> The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was "an act of courtesy to a patient." <u>Id</u>. The ALJ had no legal nor

> evidentiary basis for either of these
> findings. Nothing in Dr. Hjortsvang's reports
> indicates he relied only on claimant's
> subjective complaints or that his report was
> merely an act of courtesy. "In choosing to
> reject the treating physician's assessment,
> an ALJ may not make speculative inferences
> from medical reports and may reject a
> treating physician's opinion outright only on
> the basis of contradictory medical evidence
> and *not due to his or her own credibility
> judgments, speculation or lay opinion*."
> McGoffin v. Barnhart, 288 F.3d 1248, 1252
> (10th Cir.2002) (quotation omitted; emphasis
> in original). And this court "held years ago
> that an ALJ's assertion that a family doctor
> naturally advocates his patient's cause is
> not a good reason to reject his opinion as a
> treating physician." Id. at 1253.

Therefore, the fact that Dr. Ryan prepared his 2005 opinion in

response to a conversation with plaintiff's counsel, and may have

been advocating for his client or assisting his client with

obtaining disability benefits does not, of itself, provide a

legitimate basis for discounting Dr. Ryan's opinions.  In fact,

as noted in McGoffin, it is not at all exceptional for a

treatment provider to assist the patient in making his or her

social security disability claim.

    Eighth, in order to discount the opinions of Dr. Ryan, the

ALJ stated the following:

> There is also evidence that the claimant
> continued to garden, mow his lawn and change
> the oil in his car. After the claimant
> separated from his wife in 1999, he continued
> to care for his children, although he
> reported that they helped with chores
> (Exhibit 41).

(R. at 1026).  A medical note, dated June 20, 1996, previously
cited to by the ALJ, indicated that plaintiff had been doing a
lot of mowing (R. at 1014, 1139).  However, a review of Exhibit
41 (dated October 10, 1998), cited to by the ALJ, paints a very
different picture.  In Exhibit 41, plaintiff states the
following:

> I never said I do a lot of mowing.  My
> children ages 13 and 12 help me do a lot of
> work around the house and yard.  My children
> do 90 percent of the work outside.  My son
> tilled the garden up and planted tomatoes
> this year.  My daughter planted the sweet
> corn.  My wife planted the flowers and takes
> care of the strawberries.

(R. at 1040).  Exhibit 41 also contains these statements by
plaintiff' wife:

> He used to work on our cars a lot, but now he
> has a hard time doing most of the work.  I've
> had to help, or his nephew's have had to help
> him do most of the work.  I've had to do it
> myself, at times.  He tells me or them what
> and how to do it.  If the work is to[o]
> complicated for us to do he takes it to the
> garage.
> He wanted to plant a garden this year but
> couldn't even till it up.  Our teenagers had
> to till and plant the garden.  The neighbor
> kids helped me keep the weeds out.

(R. at 1042).  Exhibit 41 in fact demonstrates that plaintiff has
either a very limited or no ability to garden, mow the lawn, or
change the oil in his car, and thus is in no way inconsistent
with the limitations expressed by Dr. Ryan, but in fact supports

the limitations expressed by Dr. Ryan.[3]

The ALJ's conclusion that plaintiff is not disabled is also based in part on the fact that the ALJ gave little or no weight to the opinion of Dr. Ryan.  However, because of the numerous errors by the ALJ in his analysis of the opinions expressed by Dr. Ryan, the court finds that substantial evidence does not support the ALJ's conclusion that plaintiff is not disabled.

**VI.   Should the case be reversed and remanded for further hearing, or reversed for an award of benefits?**

At step five, the burden of proof is on the defendant to produce evidence that the claimant could perform other work in

---

[3]Although this evidence was not cited to by the ALJ, defendant's brief cites to a number of documents in the record to support the ALJ's assertion that plaintiff continued such activities as gardening, mowing his lawn, and changing the oil in his car, including R. at 299 (Doc. 25 at 16).  In fact, that document, dated June 19, 1996, indicates the following:

> 8-Are there activities which you were able to do in the past, but you must now avoid due to pain?  If yes, list examples and tell why you can't do these things any more.

> [Answer by plaintiff]: mowing yard-working on car-gardening...it upsets me because I can't do a lot of things because of severe pain-I've tried to do things but am unable

(R. at 299).  Defendant's brief also cited to R. at 292, in which plaintiff stated on May 4, 1996 that it takes him 3 days to mow the yard because of pain, and that he is teaching the kids to help with this (R. at 292, 295).  These citations to the record by the defendant provide further support of plaintiff's physical limitations in regards to gardening, mowing, or working on the car.

the national economy.  Where the burden is not met, reversal is appropriate.  Harris v. Secretary of Health & Human Services, 821 F.2d 541, 544 (10th Cir. 1987).  When a decision of the Commissioner is reversed, it is within the court's discretion to remand either for further administrative proceedings or for an immediate award of benefits.  When the defendant has failed to satisfy their burden of proof at step five, and when there has been a long delay as a result of the defendant's erroneous disposition of the proceedings, courts can exercise their discretionary authority to remand for an immediate award of benefits.  Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993).  The defendant is not entitled to adjudicate a case ad infinitum until it correctly applies the proper legal standard and gathers evidence to support its conclusion.  Sisco v. United States Dept. of Health & Human Services, 10 F.3d 739, 746 (10th Cir. 1993).  A key factor in remanding for further proceedings is whether it would serve a useful purpose or would merely delay the receipt of benefits.  Harris, 821 F.2d at 545; see Salazar v. Barnhart, 468 F.3d 615, 626 (10th Cir. 2006).  The decision to direct an award of benefits should be made only when the administrative record has been fully developed and when substantial and uncontradicted evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits.  Gilliland v. Heckler, 786 F.2d 178, 184, 185 (3rd Cir. 1986).

Plaintiff filed his pending application for disability on April 29, 1996.  The decision of the 1st ALJ was vacated by the Appeals Council and remanded for further hearing.  The decision of the 2nd ALJ was reversed by this court and remanded for further hearing.  A review of the 3rd ALJ decision in the present case found a legion of errors in the ALJ's analysis of the opinions of a treating physician and an examining psychologist and a psychiatrist.  Because the ALJ discounted their opinions for a host of improper reasons, the court finds that the ALJ's determination that plaintiff is not disabled is not supported by substantial evidence.

This case has now been pending for 11 years.  Furthermore, the issue before the court is whether plaintiff was disabled between March 1, 1996 through March 31, 1999.  Therefore, it would be difficult to imagine that any medical or psychological professional would be able to prepare a retrospective analysis of the severity of plaintiff's impairments or the degree of his physical and/or mental limitations, see Salazar, 468 F.3d at 626, especially if they had no contact with the plaintiff from 1996-1999.  Furthermore, the court has not been made aware of any additional contemporaneous medical evidence that might be available in this case.

In this case, plaintiff's treating physician, Dr. Ryan, has opined that plaintiff, due to his fibromyalgia, could not work

more than two hours out of eight sitting or standing, that his exacerbations of pain would cause him to miss work at least once each week, that plaintiff's condition would require significant periods of rest, he would not be reliable, and he would be markedly impaired in his ability to concentrate.  Dr. Ryan opined that plaintiff was credible and consistent, and that his complaints were consistent with his diagnosis (R. at 1339-1340).

Dr. Cox, a psychiatrist, and Dr. Prindaville, a psychologist conducted a consultative examination of the plaintiff.  They found that plaintiff was in a great deal of pain that debilitates him remarkably, and that this is the primary thing that would interfere with his work.  They noted his recent memory is deficient, and that he distrusts people and would be unable to interact with them in a reasonable manner.  As a result, they concluded that maintaining full time employment would be dubious for plaintiff (R. at 396).

These treating and examining medical sources have concluded that plaintiff cannot work due to pain associated with fibromyalgia.  No treating or examining medical source has contradicted or disputed the opinions of Drs. Ryan, Cox, and Prindaville that plaintiff is unable to work due to pain associated with fibromyalgia.  Although the ALJ asserted that their findings are not consistent with other medical sources, the ALJ failed to mention that Dr. Richardson's mental disorders exam

32

found that plaintiff "appears significantly impaired by chronic pain, fibromyalgia" (R. at 1164).  The court finds that Dr. Richardson's conclusion is in fact consistent with the opinions of Drs. Ryan, Cox, and Prindaville.  The ALJ indicated that he agreed with the opinions of the state agency medical and psychological consultants that plaintiff was not disabled and gave substantial weight to many of their opinions when making his RFC findings (R. at 1027), even though these consultants had never examined the plaintiff but had only reviewed the medical records.  Furthermore, the opinions expressed by Dr. Ryan in 2005 were made after the state agency consultative reports were prepared.

More weight should be accorded to the opinions of treating physicians.  Their opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained form objective medical findings alone or from reports of individual examinations.  The opinion of an examining physician is entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).

Defendant is not entitled to adjudicate a case ad infinitum until it correctly applies the proper legal standards and gathers evidence to support its conclusion.  Drs. Ryan, Cox and

Prindaville, who have treated and/or examined the plaintiff, have opined that plaintiff is unable to work due to pain associated with fibromyalgia.  No other treating or examining medical source disputes or contradicts their opinions regarding plaintiff's limitations.  The court finds that no useful purpose would be served by remanding this case for further proceedings since the issue is whether plaintiff was disabled from March 1, 1996 through March 31, 1999, and the medical evidence has been fully developed.  In light of the Commissioner's patent failure to satisfy the burden of proof at step five, and the 11 year delay that has already occurred as a result of the Commissioner's erroneous disposition of the proceedings during that time, the court remands this case for an immediate award of benefits from March 1, 1996.

     IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded with directions to award plaintiff disability insurance income benefits as of March 1, 1996.

     Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on July 2, 2007.

                                              s/John Thomas Reid
                                              JOHN THOMAS REID
                                              United States Magistrate Judge